

# SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA
# TEAMSTERS & EMPLOYERS PENSION FUND

TEAMSTER BUILDING • 112 MORGANTOWN STREET • UNIONTOWN, PENNSYLVANIA 15401
PHONE: 724-438-0512 • FAX: 724-438-4870



June 30, 2005

Re: <u>NOTICE OF WITHDRAWAL AND DEMAND FOR PAYMENT OF WITHDRAWAL LIABILITY</u>

<u>CERTIFIED MAIL
RETURN RECEIPT REQUESTED</u>

Mr. L. P. Marsolino, President
Marsolino Construction Company, Inc.
127 Atlas Crossing Road
P.O. Box X
Uniontown, PA 15401

Dear Mr. Marsolino:

This is a demand for payment of withdrawal liability and is assessed against Marsolino Construction Company, Inc. (hereinafter referred to as the "Employer"). The withdrawal liability arises as a result of Employer's December 31, 2004 permanent cessation of covered operations and the permanent cessation of its obligation to contribute to the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund ("Fund") during the Fund's 2004/05 plan year.

This demand is made pursuant to Section 4219 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Pursuant to the "controlled group" doctrine set forth in Section 4001(b) of ERISA, all trades or businesses under common control with Marsolino Construction Company are considered to be a single employer for purposes of assessment and collection of withdrawal liability. As members of a controlled group, each is jointly and severally responsibly for the Company's withdrawal liability. This notice of withdrawal liability and demand for payment should be considered a notice and demand to all members of the controlled group.


EXHIBIT A

Marsolino Construction Company
June 30, 2005
Page -2-

The Fund has determined that a complete withdrawal occurred in the Fund's 2004/05 Plan Year and, based on the attached calculation, hereby assesses against the Employer and demands payment of a net withdrawal liability of in the amount of **$145,232.00**. This amount reflects the application of the de minimis reduction.

A schedule of required payments determined under Section 4219(c) of ERISA is included with the calculation sheets. The payment schedule calls for 28 monthly payments of $5,304.00, and a final payment of $5,203.74 in the 29th month. The first payment will be due August 1, 2005 and the remaining installments will be due on the first day of each succeeding month. Please send payments to the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund at the address shown on this letter.

The unpaid balance of the Employer's withdrawal liability, plus any accrued interest, may be prepaid in whole or in part at any time without penalty. If you wish to prepay, contact the Fund Office for an exact payoff figure.

If payment of withdrawal liability is not made when due, and such payment is not made within 60 days after you receive written notice from the Fund of such delinquency, it is the Fund's policy to require immediate payment of the remaining balance of the withdrawal liability obligation, plus any accrued interest. Amounts determined to be in default will be referred to legal counsel for collection, in which case you also will be liable to the Fund under Sections 502(g)(2), 515 and 1451 of ERISA for reasonable attorney's fees and costs, 20% liquidated damages and additional interest until payment is made, accruing at the variable rates published quarterly by the Pension Benefit Guaranty Corporation.

In the event the Employer disputes any item relating to the determination of its withdrawal liability or the scheduling of the demanded payments, you must comply with the Fund's review procedure, a copy of which is enclosed. Notwithstanding possible initiation of the review process, the Employer is still required to make interim withdrawal liability payment on the scheduled due date and any such failure to pay will constitute a default and will result in the assessment of the additional fees and costs detailed above.

Enclosed are documents relative the Employer's withdrawal liability obligation:

   (1) Exhibits I, II and III, which set forth relevant valuation information about this Pension Fund's assets and benefit liabilities, actuarial assumptions and methods, and calculation of

Marsolino Construction Company
June 30, 2005
Page -3-

> Employer's allocated share of the Fund's total Unfunded Vested Benefit Liabilities;

(2) A copy of the Fund's Procedures For Consideration Of Employer Requests For Review Under Section 4219(b)(2)(A) of ERISA; and,

(3) A summary of the statutory procedures governing the Employer's right to a review of the determination and calculation of the assessed withdrawal liability.

Please give this matter your immediate attention. If you have any questions regarding the above, or the enclosed documents, please contact the undersigned as soon as possible. Written communications, including any Requests for Review under Section 4219(b)(2)(A), should be mailed to the address shown on page 2 within 90 days.

> SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA TEAMSTERS AND EMPLOYERS PENSION FUND
>
> By: _____
> Vito Dragone, Jr.
> Chairman/Board of Trustees

Enclosures

MarsolinoWLDL.wpd

EXHIBIT I
# SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA TEAMSTERS AND EMPLOYERS PENSION FUND
WITHDRAWAL LIABILITY DETERMINATION FOR
**MARSOLINO CONSTRUCTION**
WITHDRAWAL DATE: 12/31/2004

## A. GENERAL PLAN INFORMATION

| PLAN YEAR END | (1) PRESENT VALUE OF VESTED BENEFITS | (2) MARKET VALUE OF ASSETS | (3) UNFUNDED VESTED BENEFITS "UVB" (1)-(2) | (4) COLLECTIBLE FROM WITHDRAWN EMPLOYERS | (5) UNAMORTIZED PRIOR POOLS OF ACTIVE EMPLOYERS | (6) UNFUNDED VESTED BENEFIT POOL (3)-(4)-(5) |
|---|---|---|---|---|---|---|
| | UNFUNDED VESTED BENEFITS | | | UNFUNDED VESTED BENEFITS POOL | | |
| 6/30/90 | $58,401,585 | $53,675,029 | $4,726,556 | $77,221 | $3,707,981 | $941,354 |
| 6/30/91 | 64,246,460 | 55,753,995 | 8,492,465 | 77,221 | 4,130,401 | 4,284,843 |
| 6/30/92 | 68,229,962 | 62,395,518 | 5,834,444 | 766,982 | 6,893,731 | -1,826,269 |
| 6/30/93 | 70,135,367 | 67,407,549 | 2,727,818 | 751,775 | 4,421,565 | -2,445,522 |
| 6/30/94 | 76,584,178 | 65,498,277 | 11,085,901 | 751,775 | 1,533,197 | 8,800,929 |
| 6/30/95 | 78,488,009 | 73,392,680 | 5,095,329 | 783,527 | 9,263,338 | -4,951,536 |
| 6/30/96 | 84,735,890 | 82,773,628 | 1,962,262 | 798,335 | 3,660,083 | -2,496,156 |
| 6/30/97 | 90,896,649 | 95,950,037 | -5,053,388 | 856,674 | 621,128 | -6,531,190 |
| 6/30/98 | 104,765,342 | 110,953,712 | -6,188,370 | 386,287 | -5,947,893 | -626,764 |
| 6/30/99 | 107,884,751 | 125,836,166 | -17,951,415 | 0 | -6,528,360 | -11,423,055 |
| | | | 0 | | | |
| 6/30/00 | 116,144,774 | 128,188,580 | -12,043,806 | 0 | -16,651,766 | 4,607,960 |
| 6/30/01 | 125,217,673 | 126,992,987 | -1,775,314 | 0 | -11,219,771 | 9,444,457 |
| 6/30/02 | 133,837,383 | 113,624,512 | 20,212,871 | 0 | -1,592,633 | 21,805,504 |
| 6/30/03 | 141,101,914 | 110,473,366 | 30,628,548 | 4,396,831 | 14,882,193 | 11,349,524 |
| 6/30/04 | 144,212,604 | 112,239,705 | 31,972,899 | 4,322,083 | 23,073,789 | 4,577,027 |

-1-

EXHIBIT I
SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA
TEAMSTERS AND EMPLOYERS PENSION FUND
WITHDRAWAL LIABILITY DETERMINATION FOR
MARSOLINO CONSTRUCTION
WITHDRAWAL DATE: 12/31/2004

B. EMPLOYER CONTRIBUTION INFORMATION

| PLAN YEAR ENDING | (1) HOURLY CONTRIBUTION RATE | (2) DATE OF RATE CHANGE | (3) AVERAGE HOURLY RATE | (4) CONTRIBUTION IN YEAR | (5) BASE UNITS |
|---|---|---|---|---|---|
| 1983 | N/A | N/A | N/A | 34,767 | N/A |
| 1984 | N/A | N/A | N/A | 28,580 | N/A |
| 1985 | N/A | N/A | N/A | 39,271 | N/A |
| 1986 | N/A | N/A | N/A | 32,138 | N/A |
| 1987 | N/A | N/A | N/A | 18,221 | N/A |
| 1988 | N/A | N/A | N/A | 5,607 | N/A |
| 1989 | N/A | N/A | N/A | 6,158 | N/A |
| 1990 | N/A | N/A | N/A | 5,615 | N/A |
| 1991 | N/A | N/A | N/A | 4,536 | N/A |
| 1992 | N/A | N/A | N/A | 16,758 | N/A |
| 1993 | N/A | N/A | N/A | 17,015 | N/A |
| 1994 | 0.95 / 1.00 | 7 / 1 / 94 | 0.95 | 17,457 | 106 * |
| 1995 | 1.00 / 1.15 | 7 / 1 / 95 | 1.00 | 20,401 | 118 * |
| 1996 | 1.15 / 1.30 | 7 / 1 / 96 | 1.15 | 12,847 | 81 * |
| 1997 | 1.30 / 1.45 | 7 / 1 / 97 | 1.30 | 9,127 | 54 |
| 1998 | 1.45 / 1.60 | 7 / 1 / 98 | 1.45 | 11,997 | 61 |
| 1999 | 1.60 / 2.60 | 7 / 1 / 99 | 1.60 | 12,884 | 55 |
| 2000 | 2.60 / 2.85 | 7 / 1 / 00 | 2.60 | 17,661 | 48 |
| 2001 | 2.85 / 3.10 | 7 / 1 / 01 | 2.85 | 22,291 | 54 |
| 2002 | 3.10 / 3.35 | 7 / 1 / 02 | 3.10 | 23,201 | 52 |
| 2003 | 3.35 / 3.60 | 7 / 1 / 03 | 3.35 | 25,798 | 55 |
| 2004 | 3.60 / 3.60 | 7 / 1 / 04 | 3.60 | 22,586 | 54 |

THE HIGHEST 3 CONSECUTIVE YEAR CBU AVERAGE FOR THE LAST 10 YEAR PERIOD = 102

* Highest 3 Year Consecutive CBU's

-2-

EXHIBIT I
**SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA TEAMSTERS AND EMPLOYERS PENSION FUND**
WITHDRAWAL LIABILITY DETERMINATION FOR
**MARSOLINO CONSTRUCTION**
WITHDRAWAL DATE: 12/31/2004

### C. DETERMINATION OF EMPLOYER'S WITHDRAWAL LIABILITY

| PLAN YEAR ENDING | (1) FIVE YEAR TOTALS EMPLOYER'S CONTRIBUTIONS | (2) TOTAL PLAN CONTRIBUTIONS | (3) ANNUAL UVB POOLS TOTAL PLAN UVB POOL | (4) EMPLOYER SHARE | (5) PERCENT UNAMORTIZED | (6) UNAMORTIZED POOL |
|---|---|---|---|---|---|---|
| 1980 | | | | $149,086 | 0% | $0 |
| 1981 | | | | 6,531 | 0% | 0 |
| 1982 | | | | 10,833 | 0% | 0 |
| 1983 | | | | 19,239 | 0% | 0 |
| 1984 | Pre-merger contribution histories and | | | 7,752 | 0% | 0 |
| 1985 | withdrawal liability allocations from the | | | -6,084 | 5% | -304 |
| 1986 | formerly separate plans are carried forward | | | -13,273 | 10% | -1,327 |
| 1987 | into the post-merger calculation. | | | -34,396 | 15% | -5,159 |
| 1988 | | | | -2,240 | 20% | -448 |
| 1989 | | | | -24,165 | 25% | -6,041 |
| 1990 | * See Note on Initial Plan Year Allocation. | | 941,354 | 7,780 | 30% | 2,334 |
| 1991 | $40,137 | $16,425,796 | 4,284,843 | 10,470 | 35% | 3,665 |
| 1992 | 38,674 | 16,805,235 | -1,826,269 | -4,202 | 40% | -1,681 |
| 1993 | 50,082 | 17,026,404 | -2,445,522 | -7,192 | 45% | -3,236 |
| 1994 | 61,381 | 17,185,575 | 8,800,929 | 31,434 | 50% | 15,717 |
| 1995 | 76,167 | 17,343,410 | -4,951,536 | -21,745 | 55% | -11,960 |
| 1996 | 84,478 | 17,747,907 | -2,496,156 | -11,880 | 60% | -7,128 |
| 1997 | 76,847 | 17,665,120 | -6,531,190 | -28,411 | 65% | -18,467 |
| 1998 | 71,829 | 18,449,434 | -626,764 | -2,439 | 70% | -1,707 |
| 1999 | 67,256 | 19,382,555 | -11,423,055 | -39,636 | 75% | -29,727 |
| 2000 | 64,517 | 20,006,304 | 4,607,960 | 14,860 | 80% | 11,888 |
| 2001 | 73,961 | 20,788,584 | 9,444,457 | 33,601 | 85% | 28,561 |
| 2002 | 88,035 | 21,638,686 | 21,805,504 | 88,714 | 90% | 79,843 |
| 2003 | 101,836 | 17,288,317 | 11,349,524 | 66,854 | 95% | 63,511 |
| 2004 | 111,538 | 17,434,024 | 4,577,027 | 29,282 | 100% | 29,282 |

TOTAL EMPLOYER SHARE OF UNAMORTIZED POOL SHARES - $147,616
APPLICATION OF DE MINIMUM REDUCTION - 2,384
VALUE OF EMPLOYER WITHDRAWAL LIABILITY - $145,232

Note: For years other than the Initial Plan Year, the allocation factor is the ratio of employer contributions to total plan contributions. (4) = (1) divided by (2) times (3).

EXHIBIT I
## SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA TEAMSTERS AND EMPLOYERS PENSION FUND
WITHDRAWAL LIABILITY DETERMINATION FOR
**MARSOLINO CONSTRUCTION**
WITHDRAWAL DATE: 12/31/2004

| PLAN YEAR ENDING | (1) EMPLOYER PRE-MERGER POOL SHARE | (2) PERCENTAGE UNAMORTIZED AS OF 7/1/89 | (3) UNAMORTIZED POOL SHARE (1)*(2) |
|---|---|---|---|
| 1980 | $149,086 | 55% | $81,997 |
| 1981 | 6,531 | 60% | 3,919 |
| 1982 | 10,833 | 65% | 7,041 |
| 1983 | 19,239 | 70% | 13,467 |
| 1984 | 7,752 | 75% | 5,814 |
| 1985 | -6,084 | 80% | -4,867 |
| 1986 | -13,273 | 85% | -11,282 |
| 1987 | -34,396 | 90% | -30,956 |
| 1988 | -2,240 | 95% | -2,128 |
| 1989 | -24,165 | 100% | -24,165 |

A. SHARE OF PRE-MERGER PLAN UVB IN 1989 - $38,840

B. TOTAL UVB OF EMPLOYERS IN PRE-MERGER PLAN YEAR 1989 - 4,699,543

C. INITIAL PLAN YEAR UVB OF POST-MERGER PLAN AS OF 6/30/90 - 941,354

D. EMPLOYER'S POOL SHARE FOR INITIAL PLAN YEAR AS OF 6/30/90 - $7,780
(D. equals A. divided by B. times C.)

-4-

EXHIBIT I
## SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA TEAMSTERS AND EMPLOYERS PENSION FUND
WITHDRAWAL LIABILITY DETERMINATION FOR
**MARSOLINO CONSTRUCTION**
WITHDRAWAL DATE: 12/31/2004

### E. DETERMINATION OF EMPLOYER'S ANNUAL PAYMENT SCHEDULE

| | |
|---|---|
| 1. HIGHEST CONTRIBUTION RATE - | $624.00 |
| 2. HIGHEST 3 YEAR AVERAGE CBU'S - | 102 |
| 3. ANNUAL PAYMENT AMOUNT (1)*(2) - | $63,648.00 |
| 4. NUMBER OF FULL ANNUAL PAYMENTS - | 2 |
| 5. FINAL BALANCE PAYMENT - | $26,419.74 |
| 6. BALANCE PAYMENT DUE IN YEAR - | 3 |

### F. DETERMINATION OF EMPLOYER'S MONTHLY PAYMENT SCHEDULE

| | |
|---|---|
| 1. MONTHLY PAYMENT AMOUNT (E.(3)/12) - | $5,304.00 |
| 2. NUMBER OF FULL MONTHLY PAYMENTS - | 28 |
| 3. FINAL BALANCE PAYMENT - | $5,203.74 |
| 5. BALANCE PAYMENT DUE IN MONTH - | 29 |

EXHIBIT II

**SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA
TEAMSTERS AND EMPLOYERS PENSION PLAN**

COMPUTATION METHODS APPLICABLE UNDER THE
MULTIEMPLOYER PENSION PLAN AMENDMENTS ACT OF 1980

In accordance with the decisions made by the Trustees, the following methods are used in calculating withdrawal liabilities under MPPAA:

(A) Withdrawal Liability Allocation Method

The amount of unfunded vested benefits allocable to a withdrawing employer is determined under the "Presumptive Method" of allocation, as provided by Section 4211(b) of ERISA. This Fund's Initial Plan Year following the merger of the Teamsters Local Union 491 and Industry Pension Fund and the Cumberland Maryland Area Teamsters and Industry Pension Fund is July 1, 1989 to June 30, 1990. The combination of withdrawal liability histories of the two pre-merger funds was determined under 29 C.F.R. ¶ 4211.32.

(B) De Minimis Rule

The mandatory De Minimis Rule is applicable, as described in Section 4209 of ERISA. This states that the maximum de minimis amount for a plan year is equal to the lesser of 3/4 of 1% of the plan's unfunded vested benefits liability for that plan year or $50,000. The maximum De Minimis offset for withdrawals occurring during the 2004/05 Plan Year is $50,000.

(C) Calculation of Withdrawal Payments

(1) The annual payment is calculated based on the withdrawing employer's highest contribution rate, and average base units during the 10 plan years preceding withdrawal.

(2) A contribution base unit is a monthly contribution for one individual.

(3) The annual amount due from a withdrawing employer is to be payable on a monthly basis.

EXHIBIT III

**SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND
TEAMSTERS AND EMPLOYERS PENSION FUND**

ACTUARIAL METHODS AND ASSUMPTIONS

(A) Asset Valuation Method

For the purpose of determining the unfunded vested benefit liability for MPPAA purposes, the Fund uses the market value of assets on an accrual basis as determined by the Fund's Certified Public Accountant.

(B) Persons Included

Based on data provided to us, all persons entitled to coverage under the plan as of the valuation date are included in the calculations.

(C) Significant Actuarial Assumptions

(1) Investment Return - 8% compounded annually.

(2) Retirement Age - Retirement rates per 1,000 active participants are as follows:

| Age | Freight & UPS | Freight & UPS Top Level But Not Age 55 & 30 Svc | Freight & UPS Top Level And Age 55 & 30 Svc | All Others |
|---|---|---|---|---|
| 48 | 35 | 35 | 35 | 20 |
| 49 | 35 | 35 | 35 | 20 |
| 50 | 35 | 150 | 150 | 25 |
| 51 | 40 | 150 | 150 | 25 |
| 52 | 40 | 150 | 150 | 25 |
| 53 | 80 | 150 | 150 | 30 |
| 54 | 100 | 150 | 150 | 30 |
| 55 | 100 | 250 | 300 | 30 |
| 56 | 50 | 250 | 300 | 60 |
| 57 | 150 | 250 | 300 | 75 |
| 58 | 200 | 400 | 500 | 90 |
| 59 | 180 | 400 | 500 | 100 |
| 60 | 200 | 300 | 500 | 200 |
| 61 | 450 | 400 | 500 | 250 |
| 62 | 1,000 | 1,000 | 1,000 | 1,000 |

(3) Mortality -

The 1971 Group Annuity Table for males. Female mortality is assumed to be equivalent to that of males six years younger.

SWDL_EX3_2004-05

PROCEDURES FOR CONSIDERATION OF EMPLOYER REQUESTS
UNDER SECTION 4219(b)(2)(A) OF ERISA

The Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund hereby adopt the following revised and restated rules to implement a uniform procedure for the review of withdrawal liability determinations conducted pursuant to Section 4219(b)(2)(A) of the Employee Retirement Income Security Act ("ERISA").

1. These procedures and rules are adopted pursuant to Section 4219 of ERISA and are subject to any regulations adopted by the Pension Benefit Guaranty Corporation ("PBGC").

2. Any employer that has received from the Pension Fund a "Notice and Demand for Payment of Withdrawal Liability" shall be entitled to a review of the Pension Fund's withdrawal liability determination. Such review shall be conducted by a Sub-Committee consisting of one employer Trustee and one union Trustee, as appointed by the Pension Fund Board of Trustees.

3. An employer which desires a review of the Pension Fund's withdrawal liability determination must make a written request for review no later than 90 days after the employer receives notice of the demand for payment of withdrawal liability.

4. The employer may request review of any specific matter relating to the determination of the employer's liability and the schedule of payments provided by the Pension Fund. In connection with this review, the employer may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocated to it. The employer may furnish any additional relevant

information in written form. An employer's failure to specifically identify an inaccuracy in the calculation of its liability, the computation of its contribution history, or the determination that it has completely or partially withdrawn, will result in the waiver of such objections not raised and will bind the employer in any further proceeding.

5. If an employer requests that the Pension Fund review its determination of withdrawal liability, but fails to raise a specific issue regarding the determination or identify any specific inaccuracy in the compilation of its contribution history or the calculation of its allocable share of unfunded vested benefits, the Fund Office, Fund Counsel and Fund Actuary will examine the relevant information in the Pension Fund records and identify any inaccuracy which is apparent. If additional information or clarification is deemed to be desirable, Fund Counsel may request that employer provide such information within 30 days pursuant to Section 4219(a) of ERISA.

6. The Sub-Committee shall conduct a review of any matter raised by the employer and shall form a recommendation based upon the Pension Fund's records and evidence presented by the employer. The Sub-Committee will meet or consult with the Fund Staff and advisors to review the relevant information, consider issues raised and formulate a recommendation for the Board of Trustees after holding a review hearing. The employer will be permitted to attend the review hearing and present additional evidence or argument, either in writing or orally. The Sub-Committee will give written

notice of the date, place and time of the review hearing to the employer or its counsel. A stenographic record of such hearings will not be made and employers will be encouraged to present their position in writing.

7. To the extent practical, the Sub-Committee will complete its review and formulate a recommendation for determination by the Trustees within 120 days after an employer's request for review has been received. The employer will be provided with written notification of the Trustees' decision, the basis for the decision, and the reason for any change in the determination of the employer's liability or schedule of liability payments. If the review cannot be completed within 120 days due to the complexity of the issues raised, or for any other reason, the review will continue for such additional time as is necessary.

8. The Trustees may elect to initiate arbitration pursuant to Section 4221 of ERISA to resolve any matter raised by the employer.

9. In the event an employer initiates an arbitration proceeding pursuant to Section 4221(a)(1)(B) of ERISA prior to the completion of the Pension Fund's review process and issuance of the Trustees' decision on review, the Pension Fund's review procedure will continue until a reasonable review of the matters raised has been completed and a decision has been issued.

10. The decision of the Trustees pursuant to these procedures shall be final, and the employer shall not be entitled to any further review by the Pension Fund.

11.   Payments of the monthly withdrawal liability assessment, as specified in the schedule of payments provided by the Pension Fund at the time a formal demand for payment was made, must be made by the employer even though a review procedure has been initiated. The Pension Fund may initiate a lawsuit to collect overdue withdrawal liability payments and assess such additional sums, including interest, as are authorized under law.  Any amount collected by the Pension Fund which is subsequently determined to be not due shall be refunded to the employer with interest pursuant to PBGC regulations.

W:\VPS\-Forms\SWWLPROC.WP

STATUTORILY REQUIRED PROCEDURE FOR REVIEW OF DISPUTED
WITHDRAWAL LIABILITY DETERMINATIONS OF THE
SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA
TEAMSTERS AND EMPLOYERS PENSION FUND

Any review concerning whether and when a complete or partial withdrawal has occurred, concerning the calculation of the amount and/or payment of any withdrawal liability or any other matter, legal or factual, pertaining to withdrawal liability must be made in the following manner. Any employer failing to exhaust all steps of these review procedures will be deemed to have waived its right to contest the determination of the Pension Fund of its withdrawal liability. For purposes of initiating withdrawal liability review, the Funds formal demand issued to any entity shall constitute a demand to all commonly controlled trades or businesses. See Section 4001(b) of ERISA.

(1) WITHDRAWAL LIABILITY SUB-COMMITTEE: If, within ninety (90) days after a withdrawn employer receives a notice and demand for payment of withdrawal liability from the Pension Fund, such withdrawn employer requests in writing to the Pension Fund a review of any specific matter relating to the determination of such liability or the schedule of payments, this review will be conducted by the Withdrawal Liability Sub-Committee. The Withdrawal Liability Sub-Committee will consider any relevant evidence presented by said employer. The Withdrawal Liability Sub-Committee consists of one employer Trustee and one union Trustee, as appointed by the Pension Fund Board of Trustees. The Withdrawal Liability Sub-Committee is responsible for the review of any matter pertaining to withdrawal liability which is timely made and the formulation of recommendations on such matters for decision by the Pension Fund Board of Trustees. Following the determination of the Pension Fund Board of Trustees, their decision will be communicated in writing to the withdrawn employer including the basis for such decision and the reason(s) for any change in the determination of a withdrawn employer's liability or schedule for liability payments.

(2) ARBITRATION: After a withdrawn employer has exhausted the Sub-Committee review procedure provided in subparagraph (1) above, if it still disputes the Pension Fund's determination, it must timely initiate an arbitration proceeding as set forth herein. Within 60 days following the earlier of receipt of a written decision from the Pension Fund Board of Trustees in accordance with

        subparagraph (1) above, or 120 days after a withdrawn employer has made a timely written request for review by the Sub-Committee pursuant to subparagraph (1) above, either the withdrawn employer or the Pension Fund may initiate an arbitration proceeding as provided herein. An employer who fails to initiate an arbitration proceeding within the prescribed time may not dispute any determination made by the Pension Fund relating to its withdrawal liability; the amount demanded by the Pension Fund pursuant to Section 4219(b)(1) of ERISA shall be due and owing as mandated by Section 4221(b)(1) of ERISA. The commencement of an arbitration proceeding is made by written notice to the withdrawn employer in question, to the bargaining representative (if any) of the affected employees of the withdrawn employer, to the Pension Fund and to the Pittsburgh Office of The American Arbitration Association. The Arbitration must be held in Pittsburgh, PA. Such arbitration will be conducted in accordance with the "Multi-Employer Pension Plan Arbitration Rules" administered by The American Arbitration Association. The arbitration fees are to be paid by the party initiating the arbitration proceeding. The arbitration proceeding will be governed by Section 4221 of ERISA and the regulations of the PBGC, and the employer bears the burden of proof as proved therein.

   (3)   <u>LITIGATION</u>:  No later than 30 days after the issuance of an arbitration award in accordance with these procedures, any party to such arbitration proceeding may bring an action in the United States District Court for the Western District of Pennsylvania in accordance with Section 4301 of ERISA to enforce, modify, or vacate the arbitration award.

     For purposes of any arbitration proceeding to which the Pension Fund is a party, the determination of withdrawal liability and the amounts thus calculated by the Pension Fund with respect to the withdrawn employer may be presumed to be correct unless the withdrawn employer demonstrates by a preponderance of evidence that such determinations are unreasonable or clearly erroneous.  All determinations of the unfunded vested benefits of the Pension Fund for a plan year may be presumed to be correct unless the party contesting such determination shows by a preponderance of evidence that the actuarial assumptions and methods used were, in the aggregate, unreasonable, or the Pension Fund Actuary made a significant error in applying those assumptions or methods.

For purposes of civil litigation, the findings of fact of the arbitrator in any proceeding under these rules are presumed to be correct, rebuttable only by a clear preponderance of evidence that such findings are incorrect.

During the pendency of any arbitration proceeding, withdrawal liability payments (as determined by the Pension Fund and demanded pursuant to Section 4219(b)(1) of ERISA) must be made by the withdrawn employer, and any necessary adjustments in subsequent payments arising out of the decision of the arbitrator will be made thereafter. Any employer failing to make the required payments will be deemed to be in default under Section 4219(d)(5) of ERISA, and if said default is not cured within 60 days after receipt of a Notice to Cure, the withdrawn employer may be required to make immediate payment of the outstanding amount of its withdrawal liability. Delinquent payments of withdrawal liability obligations shall be treated as other delinquent contributions due the Pension Fund and will result in the assessment of additional damages for interest, liquidated damages (equal to 20% of the delinquent principal) and attorney's fees pursuant to Sections 502(g)(2), 515 and 4301(b) of ERISA. The Pension Fund may file suit for the collection of delinquent withdrawal liability payments, plus additional damages, pending exhaustion of the statutory review procedure.

SWSTRV.WP

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _[signature]_ ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery<br>7-2-05 |
| 1. Article Addressed to:<br><br>L. P. MARSOLINO, PRESIDENT<br>MARSOLINO CONSTRUCTION COMPANY<br>127 ATLAS CROSSING<br>P. O. BOX X<br>UNIONTOWN, PA  15401 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>  XXX Certified Mail    ☐ Express Mail<br>  ☐ Registered       ☐ Return Receipt for Merchandise<br>  ☐ Insured Mail     ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*   ☐ Yes |
| 2. Article Number<br>   *(Transfer from service label)* | 7002 2410 0007 0339 4998 |

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1035

---

• Sender: Please print your name, address, and ZIP+4 in this box •

SWPA & WMD Teamsters Pension Fund
Teamster Building
1 Morgantown Street
Uniontown, PA 15401

RECEIVED 2005 JUL -5 PM 2:03
TEAMSTERS 491
H & W OR PENSION FUNDS

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

UNITED STATES POSTAL SERVICE